Whitney E. Street (SBN 223870)
**Block & Leviton LLP**
610 16th Street, Suite 214
Oakland, California 94612

Jason M. Leviton (*pro hac vice forthcoming*)
Jacob A. Walker (SBN 271217)
Joel A. Fleming (SBN 281264)
**Block & Leviton LLP**
155 Federal Street, Suite 400
Boston, Massachusetts 02110

(617)398-5600 phone

whitney@blockesq.com
jason@blockesq.com
jake@blockesq.com
joel@blockesq.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Emil Frank, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Apple Inc.<br><br>Defendant. | Case No. _____<br><br>**Class Action Complaint**<br><br>*Jury Trial Demanded* |

Plaintiff Emil Frank ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief as to all other matters, and based upon the investigation conducted by and through his attorneys, which included, among other things, a review of news reports, press releases issued by Defendant Apple Inc. ("Apple" or "Defendant"), and other publicly available documents, as follows:

**Summary of the Action**

1. Each year, Apple's most loyal fans wake up in the middle of the night to order the newest iPhones. Seeking to take advantage of this fervor among their most loyal fans, Apple introduced in 2015 a program called the "iPhone Upgrade Program." The promise of the program was that customers could make a simple monthly payment and then, each year, upgrade their iPhone to the newest model. Apple promised iPhone Upgrade Program customers a new phone every single year.

2. While scores of customers signed up for the program and were ready to take advantage of the every-year upgrade with the release of the new iPhone 7 and 7 Plus on September 9, 2016, Apple had a different plan in mind. It allowed non-iPhone Upgrade Program customers to snap up the limited inventory of the new devices while telling countless iPhone Upgrade Program customers to "check back later."

3. iPhone Upgrade Program customers are left waiting for new phones while they continue to make payments on their old phones. Even worse, their eligibility to get a new phone immediately upon release in 2017 or other future years without making extra payments will be limited by the terms of the program.

4. This action seeks to hold Apple responsible for its misleading marketing of the iPhone Upgrade Program. Specifically, Plaintiff seeks compensatory and injunctive relief that (a) reimburses the class for any extra payments they have made or will need to make on their 2015-purchased iPhones while they wait for a new iPhone; (b) retains their eligibility for an iPhone upgrade in September 2017 even if they have not been able to make 12 payments on their 2016 device because of the Apple-imposed delay; (c) requires Apple to offer their full inventory to all

customers, and to stop limiting the availability of devices to customers using the iPhone Upgrade Program; and (d) allows aggrieved consumers to return their 2015-purchased iPhones and end their participation in the iPhone Upgrade Program with no further obligations.

## Jurisdiction and Venue

5. This Court has subject-matter jurisdiction over this action pursuant to Title 28, United States Code, Section 1331, and pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(a) and (d), because the amount in controversy exceeds $5 million exclusive of interest and costs, and more than two thirds of the members of the Class are citizens of states different from those of Defendants.

6. This Court has jurisdiction over Apple because it is a corporation based in Cupertino, California and has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1931(b), as the Company has its principal offices located in this District and conducts substantial business here.

## Parties

8. Plaintiff Emil Frank is an individual residing in Brooklyn, New York. He signed up for the iPhone Upgrade Program in September 2015 and currently owns an iPhone 6s Plus 64 GB in Space Gray which he purchased using the program. He tried to purchase an iPhone 7 Plus in either Black or Jet Black in either 128 GB or 256 GB on September 9, 2016 under the program, but was not able to do so.

9. Defendant Apple Inc. is a corporation organized under the laws of California with a principal place of business at 1 Infinite Loop, Cupertino, California 95014.

## Substantive Allegations

10. As has become the custom in September of each year, on September 9, 2015, Apple introduced their then-newest iPhones: the iPhone 6s and iPhone 6s Plus.

11. At the same time as it introduced iPhone 6s and 6s Plus, Apple also unveiled what it called the "iPhone Upgrade Program." The program was described by Apple as a way to get a "new iPhone every year and the coverage you want from AppleCare+."

12. Using marketing language such as "Get a new iPhone every year," and "Getting the latest iPhone has never been easier," Apple encouraged customers to make monthly payments to Apple in exchange for the promise of consistently getting access to the newest iPhone each year.

13. The iPhone Upgrade Program offered Apple's biggest fans and most loyal customers a way to make simple monthly payments in exchange for the newest iPhones, with a promise that "every year" the customer would be able to trade in last year's iPhone and receive the newest version of the phone.

14. For example, a customer who was interested in purchasing a 64 GB iPhone 6s Plus could pay $40.75 per month to receive the phone and AppleCare+ warranty service.

15. Under the terms of the program, so long as the customer waited at least six months and had made at least 12 payments, they could trade in their old iPhone and receive a new one at a similar monthly fee. Once the customer makes 24 payments on a single phone, she is entitled to keep the device and the contract ends.

16. Importantly, the payments account for more than the price of paying outright for the iPhone device. Customers pay an extra fee to Apple in order to have access to the newest devices on an annual basis and are required to bundle AppleCare+ warranty service as part of their plan.

17. Because Apple typically releases new iPhones in September each year, Apple's message was simple: make 12 monthly payments on the iPhone 6s or 6s Plus and then, next September, use the Upgrade Program to immediately upgrade to the newest iPhone technology.

18. As Apple's marketing page explained it, "[Y]ou can also upgrade to a new iPhone after just six months, if you've made at least 12 payments. Just trade in your current iPhone and start a new plan. It's that easy."

CLASS ACTION COMPLAINT                                                                                    4

19. The program was a huge success. One analyst, Gene Munster of Piper Jaffray, estimated that "15% of new iPhone customers" might opt-in to the program when it was first announced. By November, Munster had raised his estimates to "as high as 50%," after a survey indicated that at least 37% of respondents joined the program.

20. At the first opportunity that iPhone Upgrade Program customers had to use the program, however, they found out that the program was anything but "easy." Instead, it was a marketing scheme that utterly failed its participants.

21. On September 7, 2016, Apple announced the iPhone 7 and iPhone 7 Plus.

22. As Apple explains it, the iPhone 7 and 7 Plus are the "best, most advanced iPhone[s] ever," and are "packed with unique innovations that improve all the ways iPhone is used every day."

23. The new iPhones promoted better performance, better battery life, innovative new cameras, an "amazing audio experience," and water resistance, among other breakthrough features.

24. Apple announced that customers could start ordering the iPhone 7 and 7 Plus on Friday, September 9 (at 12:01 a.m. Pacific time), and that the phones would be available in stores and delivered to customers beginning on Friday, September 16.

25. Like many Apple customers, iPhone Upgrade Customers, including Plaintiff, stayed up late or set their alarms to wake up in the middle of the night so that they could be among the first to pre-order the new phones.

26. As promised, sales of the iPhone 7 and 7 Plus became available at apple.com and on the Apple Store "app" at 12:01 a.m. on September 9.

27. While traditional, non-program Apple customers were directed to add phones to their shopping carts and proceed to checkout, Apple's iPhone Upgrade Program customers were sent a different route.

28. What became clear to these Upgrade Program customers very quickly was that Apple was providing extremely limited inventory for them to reserve for pickup at specific Apple

Stores. While other non-plan customers snapped up popular iPhone 7 and 7 Plus devices in various sizes and colors, most iPhone Upgrade Program customers had access to almost *no* iPhone inventory to choose from for their upgrade.

29. Before long, certain iPhone models were backordered until at least November 2016. But iPhone Upgrade Customers could still not even place orders that would arrive when inventory became available the way Apple's traditional customers could. Instead, they were simply shut out of reservations and told to check back later for future appointments and inventory.

30. iPhone Upgrade Program customers were told bluntly: "We're not taking any more reservations to upgrade your iPhone right now. Reservations will reopen at 8:00 a.m. on September 17. Please come back then to make a reservation."

31. Outrage was immediate. For example, the MacRumors website reported that this message appeared "just minutes after pre-orders began," and while Apple's traditional customers were still snapping up iPhones set to be delivered on September 16.

32. As online publication Motherboard put it: Apple created "two separate pools of phones to order from. If you paid up front, you were pulling from what appeared to be a universal stock list. But to upgrade your old iPhone using the upgrade program, stocks were allocated to specific stores. . . The in-store requirement makes it harder, obviously, to get your desired iPhone if you're part of the upgrade program."

33. Motherboard continued: "Another thing making it hard to get the specific iPhone you want [if you are an iPhone Upgrade Program customer] is the fact that . . . Apple isn't even offering the option to preorder or get on a waitlist for phones that aren't in stock."

34. iPhone Upgrade Program customers—some of whom had woken up at three in the morning to place their orders—were shocked.

35. News outlets covered the disappointment. Motherboard ran a story headlined "iPhone 7 Shortages Are Turning Apple's iPhone Upgrade Program into a Big Mess."

36. 9to5Mac ran a story entitled "Apple's iPhone Upgrade Program looks like the worst way to pre-order the iPhone 7".

37. MacRumors ran a story entitled "iPhone Upgrade Program Causes Headaches on Launch Day due to Limited Stock."

38. This is not just a problem created by the limited supply of the newly released iPhones. Rather, Apple *intentionally* limited the inventory available to iPhone Upgrade Program customers (who are already contractually locked into making monthly payments for their old devices) to capture sales from new customers who weren't already part of the program.

39. Indeed, customers who purchased their devices from carriers (such as AT&T or Verizon) or from Apple without being part of the program were able to secure their iPhones long after iPhone Upgrade Program customers were shut out. Even customers on similar plans offered by the carriers (such as AT&T Next) were provided more access than iPhone Upgrade Customers were.

40. The consequences for iPhone Upgrade Program members are severe.

41. *First*, they are not able to get a new iPhone "every year" as Apple promised, as they will now be delayed weeks or months (unlike many of Apple's other customers, who were able to order what they wanted during the launch and who will start to receive their desired devices as soon as Friday, September 16.) For these customers, having quick access to the latest technology is the very reason they signed up for the program in the first place.

42. *Second*, iPhone Upgrade Program customers will now be forced to make additional payments on their old phones while they wait for availability of new ones, violating the promise of the program. If an iPhone Upgrade Program customer is not able to get her choice of iPhone until November, they might make two or three additional payments on their old phone.

43. *Third*, the knock-on effects are even worse. Because the terms of the program require a customer to make twelve payments before upgrading to a new phone, if Apple introduces another revolutionary new phone in September 2017 (as most pundits expect), iPhone Upgrade Program customers that are now forced to wait until November or later to purchase

their 2016 iPhones will be shut out completely from receiving the new phone (without making extra payments) until at least November 2017, months after everyone else receives their phone.

44. For example, imagine an iPhone Upgrade Program customer who signed up for the program in September 2015 and purchased an iPhone 6s Plus. The customer has made 12 monthly payments as of September 2016 and logs in to take advantage of the upgrade and receive a new iPhone 7 Plus, but instead is told to come back later and must wait until November (or later) to receive the phone she wants. The customer will have to make at least two additional monthly payments on the iPhone 6s Plus (costing her $80 or more) before receiving the new iPhone 7 Plus as promised. When Apple releases the next iPhone in September 2017, that customer will have only made 10 payments on their iPhone 7 Plus. Even if there is plenty of inventory set aside for iPhone Upgrade Program customers in 2017, that customer will need to make two extra payments (an additional $80 or more) to be eligible for the immediate upgrade, or will instead need to wait months to receive her new phone.

45. What is worse, iPhone Upgrade Program customers *still* can't place orders for new phones. Instead, they have been told to check back on September 17 at 8:00 a.m. to see if they can make an appointment at a local Apple store to receive a new device. The appointment will be successful only if the local store has inventory of the desired device. But for devices which are backordered and unavailable, iPhone Upgrade Program customers will be forced to check back every day to make an appointment. No other iPhone customer is *required* to be so actively involved in securing the newest phone. Other customers can simply place their orders now and receive their phones as soon as they are available. Shockingly, the very customers who are most likely to value receiving new iPhones as soon as they are available are the ones Apple courted with their iPhone Upgrade Program. These customers are now in a worse position than every other iPhone customer because they joined the program.

### Plaintiff's Experiences

46. Emil Frank is a loyal Apple customer who chose to join the iPhone Upgrade Program because he saw it as a premium option for the luxury of having a new phone every year.

He relied on Apple's unambiguous promise of a "new iPhone every 12 months." It was this promise that caused him to join the program, and this promise that Apple violated. Mr. Frank woke up at 2:45 a.m. New York time and was shocked to find that within moments, it was impossible to find an iPhone under the program anywhere near his location in New York City. He began searching in other parts of the state, as he was willing to drive to Buffalo or Albany to get access to his new phone, all to no avail. He expanded his search as far as North Carolina and Maine: nowhere was he able to get the iPhone model he desired. Mr. Frank checked inventory at every Apple store in New York, New Jersey, Pennsylvania, Connecticut, Rhode Island, Massachusetts, Vermont, New Hampshire, Maine, Maryland, Delaware, Virginia, and North Carolina: none would offer him any of the four devices he was interested in, nor would any allow him to order the device and be notified when it was ready. At the same time as he was being shut out, customers outside the program were snapping up 128 and 256 GB iPhone 7 Plus devices in Black and Jet Black. Non-upgrade customers were able to place orders that guaranteed in-store pickup or promised to deliver as early as September 16 or shortly thereafter. Now, Mr. Frank is left waiting—likely into November or December. Customers outside the program were securing phones that would have been acceptable to Mr. Frank for hours after he was completely shut out. Having lost all faith in the iPhone Upgrade Program, Mr. Frank decided to purchase a new phone for approximately $950; his best hope of receiving the phone will be sometime in October, three weeks or more after it was made available to others. He is now stuck with an obligation to make twelve additional payments on the Upgrade Program phone he wasn't able to use as intended.

## Class Action Allegations

47.   Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who joined the Apple iPhone Upgrade Program prior to September 2016, fulfilled their obligation to make twelve monthly payments under the Program or are willing to fulfill that obligation, and have been unable to reserve or acquire a new iPhone 7 or 7 Plus. Excluded from the Class is the Defendant, directors and officers of Defendant, as well as their families and affiliates.

48. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

49. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include, but are not limited to:

   a. Whether Apple breached their contracts with iPhone Upgrade Program customers by refusing to allow them to reserve phones or access new iPhone inventory
   b. Whether Apple's implementation of the iPhone Upgrade Program violates the duty of good faith and fair dealing;
   c. Whether Apple's implementation of the iPhone Upgrade Program was unfair and/or deceptive;

50. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained similar damages from Defendants' wrongful conduct alleged herein.

51. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

52. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**Causes of Action**

**Count 1**
**Breach of Contract**

53. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

54. Plaintiff and members of the Class entered into a contract with Apple for the iPhone Upgrade Program.

55. Plaintiff did all, or substantially all, of the significant things that the contract required them to do.

56. Defendant failed to honor the promises of the iPhone Upgrade Program contract by engaging in the conduct described above.

57. Plaintiff and members of the class were harmed by Apple's failures.

## Count 2
## Breach of the Covenant of Good Faith and Fair Dealing

58. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59. The covenant of good faith and fair dealing, which imposes upon each party to a contract a duty of good faith and fair dealing in its performance, is implied in every contract, including the contracts related to the iPhone Upgrade Program. Good faith and fair dealing is an element imposed by common law or statute as an element of every contract under the laws of every state.

60. Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to violate the spirit of the bargain and not to intentionally do anything to injure the other party's right to receive the benefits of the contract.

61. Plaintiff reasonably relied upon Apple to act in good faith with regard to the contract or contracts constituting the Apple iPhone Upgrade Program and in the methods and manner in which it carries out the contract terms.

62. Apple has violated the duty of good faith and fair dealing by operating the iPhone Upgrade Program in the manner described above, and Plaintiff has been damaged as a result.

## Count 3
## Unjust Enrichment

63. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

64. Plaintiff and the Class have conferred a benefit upon Apple.

65. Apple appreciates and/or has knowledge of this benefit.

66. Under principles of equity and good conscience, Apple should not be permitted to retain revenue acquired by virtue of their unlawful conduct.

67. Plaintiff has no adequate remedy at law.

### Count 4
### Violations of the Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.*

68. Plaintiff incorporates the above allegations by reference as if fully set forth herein.

69. In violation of Civil Code section 1750, et seq. (the "CLRA"), Defendant Apple has engaged and is engaging in unfair and deceptive acts and practices in the course of transactions with Plaintiff, and such transactions are intended to and have resulted in the sale of goods to consumers. Plaintiff and the Class Members are "consumers" as that term is used in the CLRA because they sought or acquired Defendant's goods and services for personal, family, or household purposes. Defendant's past and ongoing acts and practices include, but are not limited to, Defendant's representations about the iPhone Upgrade Program and Defendant's implementation of the program to limit the supply of phones.

70. Defendant's violations of the Civil Code have caused damage to Plaintiff and other Class Members and threaten additional injury if the violations continue, including as set forth above.

71. At this time, Plaintiff seeks only injunctive relief pursuant to the CLRA, without prejudice to amend their complaint to seek money damages under the CLRA at a later time. Cal. Civ. Code § 1782(d).

### Count 5
### Violations of the Unfair Competition Law (UCL), California Business and Professions Code § 17200, *et seq.*

72. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

73. In violation of California Business and Professions Code 17200 *et seq.*, Defendant's conduct in this regard is ongoing, and includes, but is not limited to, statements

made by Defendant and Defendant's omissions, including marketing material related to the iPhone Upgrade Program, the iPhone Upgrade Program contract, marketing material on Defendant's website and in Defendant's retail stores, and material provided to the press by Defendant. Defendant has failed to disclose their business conduct as set forth above.

74. By engaging in the above-described acts and practices, Defendant has committed one or more acts of unfair competition within the meaning of the Unfair Competition Law, and, as a result, Plaintiff and the Class have suffered injury-in-fact and have lost money and property as described above.

75. Defendant's business acts and practices are unlawful, in part, because they violate California Business and Professions Code, § 17500, *et seq.*, which prohibits false advertising, in that Defendant made untrue and misleading statements regarding the iPhone Upgrade Program designed to induce consumers to enter into obligations relating to the program, and regarding which statements Defendant knew or which, and by the exercise of reasonable care Defendant should have known, were untrue and misleading.

76. Defendant is therefore in violation of the unlawful prong of the Unfair Competition Law.

77. Defendant's business acts and practices are also unfair because they have caused harm and injury-in-fact to Plaintiff and Class Members and for which Defendants have no justification other than to increase, beyond what Defendant would have otherwise realized, revenue from its iPhone Upgrade Program at the expense of the class.

78. Defendant's conduct lacks reasonable and legitimate justification in that Defendant has benefited from such conduct and practices while Plaintiff and the Class members have been misled as to the nature and integrity of Defendant's iPhone Upgrade Program, and have, in fact, suffered material disadvantage regarding their interests. Defendant's conduct offends public policy in California tethered to the Consumer Legal Remedies Act. In addition, Defendant's *modus operandi* constitutes a sharp practice in that Defendant knew and should have

known that consumers would be offended by the manner in which Defendant implemented the iPhone Upgrade Program.

79. Defendant's acts and practices were fraudulent within the meaning of the Unfair Competition Law because they were likely to mislead (and did in fact mislead) the members of the public to whom they were directed.

**Prayer for Relief**

Wherefore, Plaintiff prays for relief and judgment as follows:

a. Determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as Class Representatives pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Class Counsel;

b. awarding compensatory and punitive damages in favor of Plaintiff and the other class members against Defendant for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon;

c. awarding injunctive relief sought by Plaintiff;

d. awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

e. awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

**Demand for Jury Trial**

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

| | | |
|---|---|---|
| 1 | September 12, 2016 | **Block & Leviton LLP** |
| 2 | | /s/ Jacob A. Walker |
| 3 | | Jacob A. Walker (SBN 271217) |
| | | Jason M. Leviton (*pro hac vice forthcoming*) |
| 4 | | Joel A. Fleming (SBN 281264) |
| 5 | | 155 Federal Street, Suite 400 |
| | | Boston, MA 02110 |
| 6 | | (617)398-5600 phone |
| 7 | | jake@blockesq.com |
| | | jason@blockesq.com |
| 8 | | joel@blockesq.com |
| 9 | | |
| | | Whitney E. Street (SBN 223870) |
| 10 | | **Block & Leviton LLP** |
| | | 610 16th Street, Suite 214 |
| 11 | | Oakland, California 94612 |
| 12 | | |
| | | whitney@blockesq.com |
| 13 | | |
| 14 | | *Attorneys for Plaintiff* |

Class Action Complaint                                                                                   15